UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **ESTATE OF JOSE FELICITO** | § | |
| **FIGUEROA**, *et al*, | § | |
| | § | **CIVIL ACTION NO. V-05-56** |
| Plaintiffs, | § | **CIVIL ACTION NO. V-05-57** |
| | § | **CIVIL ACTION NO. V-05-58** |
| v. | § | **CIVIL ACTION NO. V-05-59** |
| | § | **CIVIL ACTION NO. V-05-60** |
| **TYRONE WILLIAMS**, *et al*, | § | **CIVIL ACTION NO. V-05-61** |
| | § | **CIVIL ACTION NO. V-05-62** |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Great Dane Trailer's ("Great Dane") First Amended Motion for Application of Foreign Law (Dkt. No. 75),[1] which Defendant Salem Truck Leasing, Inc. ("Salem Truck") adopted and joined (Dkt. No. 76),[2] and to which Plaintiffs Estates of Jose Felicito Figueroa, Zulma Estela Gomez, Jose Joel Figueroa Gomez, Jose Gererado Figueroa Gomez, Gloria Rivera, and Pablo Figueroa ("Plaintiffs") have responded (Dkt. No. 83) and Great Dane has replied (Dkt. No. 86). After considering the motion, response, reply, record, and applicable law, the Court is of the opinion that Defendants' motion should be **GRANTED**.

## I. Factual and Procedural History[3]

This action stems from a failed alien smuggling operation in which Defendant Tyrone Williams ("Williams"), a truck driver, was paid to transport illegal aliens—all citizens of Mexico and Honduras—from Harlingen, Texas through a border check point to Houston, Texas in his trailer. Williams did not transport the aliens to Houston, however, but instead abandoned the trailer at a gas station in Victoria, Texas. Of the 74 aliens in the back of the trailer, 19 died of

---

1. Unless otherwise noted, all docket entries refer to case number 6:05-cv-56.
2. The Court **GRANTS** Salem Truck's request for adoption and joinder (Dkt. No. 76).
3. The facts underlying this case are set forth at length in the recent criminal appellate decision, *United States v. Williams*, 610 F.3d 271, 274—76 (5th Cir. 2010).

1

dehydration, hyperthermia, suffocation, and/or mechanical asphyxia, and dozens more were injured.

Plaintiffs in this action are the families of the decedent aliens and are residents and citizens of Mexico and Honduras. The movant, Great Dane, is a Delaware limited partnership in the business of manufacturing trailers for the transportation of dry goods and food products and allegedly manufactured the trailer that was ultimately used in the failed smuggling operation. Plaintiffs' causes of action against Great Dane include breach of express and implied warranties, negligence, product liability, and wrongful death. Defendant Salem Truck is a New York corporation and allegedly owned the trailer used to transport the decedents. Plaintiffs' causes of action against Salem Truck include negligence, negligent entrustment, and wrongful death.

Great Dane and Salem Truck now move the Court to apply the laws of Mexico and Honduras to Plaintiffs' claims for damages. The laws of Mexico and Honduras conflict with the laws of Texas because those jurisdictions do not recognize survival actions and have different methods of computing compensatory damages for wrongful death claims. Moreover, Mexico and Honduras do not recognize punitive damages as a component of civil actions.

## II. Legal Standard

This Court's determination of foreign law is governed by Federal Rule of Civil Procedure 44.1, which provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

FED. R. CIV. P. 44.1; *see Ramsay v. Boeing Co.*, 432 F.2d 592, 600 n.11 (5th Cir. 1970) (noting that "the determination of foreign law is treated as a question of law"). Although the Court may

2

consider any relevant material or source under Rule 44.1, "expert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law is determined." *Matter of Arbitration between Trans Chem. Ltd. and China Nat'l Mach. Import & Export Corp.*, 978 F. Supp. 266, 275 (S.D. Tex. 1997). "In making its determination of foreign law the court may rely on foreign case law decisions, treatises, and learned articles, even if they are not generally admissible under the Federal Rules of Evidence." *Id.* at 275—76.

A federal court sitting in diversity applies the conflict-of-laws rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In Texas, a court presented with a choice-of-law question must first determine whether there is a conflict between the laws of the jurisdictions whose law potentially applies. *See Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002); *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 412 (N.D. Tex. 2009). If no conflict exists, the choice-of-law question is moot and the law of the forum state applies. *Schneider Nat'l Transp.*, 280 F.3d at 536. It is only where the laws of jurisdictions whose laws potentially apply conflict that a court performs a choice-of-law analysis. *Tobin*, 637 F. Supp. 2d at 412.

If there is a conflict between the jurisdictions' laws, the Court must decide what law applies, using the choice-of-law rules of Texas. *Klaxon Co.*, 313 U.S. at 496; *Melton v. Borg-Warner Corp.*, 467 F. Supp. 983, 985 (W.D. Tex. 1979). In Texas, the Restatement (Second) of Conflict of Laws' ("Second Restatement") "most significant relationship" test is used to decide choice-of-law issues. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) ("[I]n the future all conflicts cases sounding in tort will be governed by the 'most significant relationship' test as enunciated in Sections 6 and 145 of the Restatement (Second) of Conflicts."); RESTATEMENT (SECOND) OF

CONFLICT OF LAWS §§ 6, 145. The Second Restatement "requires the court to consider which state's law has the most significant relationship *to the particular substantive issue to be resolved.*" *Wagner*, 18 S.W.3d at 205 (emphasis in original) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1)); *see also, e.g.*, *Webb v. Rogers Mach. Mfg. Co.*, 750 F.2d 368, 374 (5th Cir. 1985) (applying Texas law to "many of the substantive issues" and California law to the issue of successor liability). Great Dane and Salem Truck ask the Court to determine that Mexican and Honduran law should be applied to the issue of damages.

### III. Analysis

Before considering the substantive merits of Great Dane's motion, the Court first notes that Great Dane has objected to portions of Plaintiffs' evidence, *i.e.*, the affidavit of Plaintiffs' foreign law expert, Jesus Arias (Dkt. No. 83, Ex. 1), as well as the compilation found in the report of Plaintiffs' liability expert, Dean Jacobson (Dkt. No. 84, Ex. 1). (*See* Great Dane's Reply to Plaintiffs' Response to Great Dane's Motion for Application of Foreign Law, Dkt No. 86.) The objections are overruled. The Court if of the opinion that the objections more appropriately apply to the weight of this evidence, and not its admissibility, and the Court will consider the objections accordingly.

#### A. Mexican and Honduran Damages

Mexican law is composed of both federal and state law. (Lopez Aff., Dkt. No. 75, Ex. C at 3.) Plaintiffs' claims would be governed by the laws of the state in which each plaintiff resides. The Mexican Plaintiffs in this case reside in San Luis Potosi and in Guanajuato. The differences between the two states' laws are slight. (*See Id.*)

Mexican law provides for the recovery of material damages. (*Id.* at 5.) Material damages are economic damages that are "equal to 2 years of wages at 4 times the general minimum wage

4

rate in the region prevailing at the time of death plus 2 additional months of wages for funeral expenses." (*Id.*) These formulas are statutorily set and do not require proof of actual lost wages or expenses. (*Id.* at 7, 10.) The only difference between the three Mexican jurisdictions' material damage calculation is that Guanajuato and federal law provide that the highest minimum wage in the region be utilized in the formula, while San Luis Potosi has no such requirement. (*Id.* at 5—6.) Furthermore, Plaintiffs cannot recover under Mexican law if their injury was not a "direct and immediate consequence" of the conduct about which Plaintiffs complain. (*Id.* at 7, 10.)

Mexican law also provides for moral damages, which are "monetary awards made by courts to help alleviate or cure one's moral injury." (*Id.* at 9.) Moral damages are not punitive damages. "'[T]he end of moral compensation is not to inflict a loss upon the offender, but rather to obtain for the victim an increase in his patrimony.'" (*Id.* (quoting MANUEL BORJA SORIANO, GENERAL THEORY OF OBLIGATIONS 376 (Porrua 21st ed. 2009).) Under the laws of San Luis Potosi and Mexican federal law, a claim for moral damages belongs to the decedent and cannot be recovered by the heirs unless suit was filed prior to the decedent's death. (*Id.* at 10—11.) Guanajuato's Civil Code allows a decedent's heirs to recover moral damages belonging to the decedent, and there is no requirement that suit be filed before death to preserve the claims. (*Id.*) Under Guanajuato law, moral damages are capped at one-third of the total material damages awarded. (*Id.* at 11.) Punitive damages are not recognized by any federal or state laws in Mexico. (*Id.* at 4.)

Like Mexico, Honduras recognizes both material and moral damages. (Lopez Aff. at 13; Rosenn Aff., Dkt. No. 75, Ex. D-1 at 6—7.) Unlike Mexico, Honduras does not utilize a precise formula to calculate material damages. (Lopez Aff. at 14; Rosenn Aff. at 6—7.) "[D]amages for death or personal injury of a tort victim include not only out-of-pocket expenses such as lost

wages and medical expenses, but also lost support and future earnings. However, Honduran law limits recoverable damages to those that can be proven with reasonable certainty."(Rosenn Aff. at 6—7.) Under Honduran law, moral damages are only available when the alleged tortfeasor is found guilty in a criminal proceeding. (Lopez Aff. at 14; Rosenn Aff. at 7—10.) Since Great Dane and Salem Truck have not been charged or convicted of a crime—nor can they be under Honduran law because they are legal entities—moral damages would not be applicable. Punitive damages are not recoverable under Honduran law. (Lopez Aff. at 14; Rosenn Aff. at 10.)

### B. Most Significant Relationship Test

Because there is clearly a conflict between the laws of Texas, Mexico, and Honduras with respect to Plaintiffs' claims for damages, the Court must decide which law is most appropriate to each plaintiff's claim for damages.

Under the "most significant relationship" test, Plaintiffs' damages should be determined under the substantive law of the jurisdiction with the "most significant relationship" to the parties and the occurrence. *See Gutierrez*, 583 S.W.2d at 318; *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000). Section 6 of the Second Restatement sets forth the following factors relevant in a choice-of-law analysis:

> (a) the needs of the interstate and international systems;
> (b) the relevant policies of the forum;
> (c) the relevant policies of the other interested states and the relative interests of those states in determination of the particular issue;
> (d) the protection of justified expectations;
> (e) the basic policies underlying the particular field of law;
> (f) certainty, predictability, and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2); *Hughes*, 18 S.W.3d at 205; *see also Doctor v. Pardue*, 186 S.W.3d 4, 9 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) ("In tort actions, the needs of interstate and international systems, the relevant policies of the forum, the

relevant policies of other interested states, and the ease in the determination and application of the law to be applied assume greater importance.") (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145, cmt. b).

Section 145 of the Second Restatement states that the following contacts are to be taken into account when applying the principles of Section 6 in order to determine the law applicable to a particular issue:

> (a) the place where the injury occurred;
> (b) the place where the conduct causing the injury occurred;
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2).

**1. Section 145 Factors**

The relevant Section 145 factors in this case are as follows: All plaintiffs and decedents live(d) in Mexico and Honduras. There is no evidence indicating that any plaintiff or decedent previously resided in Texas, and there is no evidence indicating that any plaintiff will live in Texas after the conclusion of this lawsuit. With respect to the two defendants urging the present motion, Great Dane is a Delaware limited partnership and Salem Truck is a New York corporation with its principal place of business in New York. The trailer was also licensed and inspected in New York.

Much of the conduct leading up to—and allegedly causing—decedents' deaths occurred outside of Texas. The decedents' decisions to illegally enter the United States and their agreement to engage in the smuggling operation were made outside the United States. Great Dane's alleged defective design and manufacture of the trailer and Salem Truck's alleged negligent entrustment of the trailer to Williams also occurred outside of Texas.

In fact, the only connection this action has with the State of Texas is that Williams abandoned the trailer in Victoria, Texas, leaving Texas as the place of injury. While the place where the injury occurred generally plays an important role in personal injury actions, the commentary to the Second Restatement cautions that when the place of injury is fortuitous—as in this case—the place where the injury occurred is of relative insignificance. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. e; *Torrington*, 46 S.W.3d at 849. When additional considerations favor one jurisdiction over another, the place of injury is no longer the controlling factor, and a court must determine the jurisdictions' interests with respect to the particular issues set forth in Section 6 of the Second Restatement. *See Trailways, Inc. v. Clark*, 794 S.W.2d 479, 485 (Tex. App.—Corpus Christi 1990, pet. denied).

## 2. Section 6 Analysis

### a. The needs of the interstate and international systems

The issue of illegal immigration has put a strain on the relationship between the United States—including the State of Texas—and Latin American countries during recent years.[4] If Plaintiffs are entitled to collect damages that are exponentially higher than what would be recoverable under the laws of the decedents' home countries, it could serve to further encourage the notion that the key to fortune is entry into the United States. Such a recovery would only serve to strengthen the concept of rich reward for participating in this type of illegal conduct. *See, i.e.*, *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 138 (2002) (recognizing that an award of back pay to an illegal alien "would encourage the successful evasion of

---

[4]. *See, i.e.*, Kay McGarrity Desmond, *Shooting at Texas/Mexico Border Further Strains Relations between the U.S. and Mexico*, HOUSTON EXAMINER (June 10, 2010), *available at* http://www.examiner.com/ conservative-in-houston/shooting-at-texas-mexico-border-further-strains-relations-between-the-u-s-and-mexico (last visited Nov. 8, 2010); Michael Flynn, *Global Migration Coursing Through Mexico* (Dec. 25, 2005), *available at* http://globalpolitician.com/articleshow.asp?ID=1503&cid=7&sid=88 (last visited Nov. 8, 2010); C. David Skinner, *Illegal Immigration Across the U.S.-Mexico Border* (U.S. Army War College 2006), *available at* http://www.strategicstudiesinstitute.army.mil/pdffiles/ksil499.pdf (last visited Nov. 8, 2010).

apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations"). Thus, respecting Mexico and Honduras' limitation on damages would support the needs of the international system by furthering all three countries' interest in peacefully dissuading illegal immigration.

International comity also supports the Court's respect and recognition of Latin American law, even if it would not provide Plaintiffs with the same recovery as Texas law. As the Fifth Circuit recognized in *Gonzalez v. Chrysler Corp.*:

> Mexico, as a sovereign nation, has made a deliberate choice in providing a specific remedy for this tort cause of action. In making this policy choice, the Mexican government has resolved a trade-off among the competing objectives and costs of tort law, involving interests of victims, of consumers, of manufacturers, and of various other economic and cultural values. In resolving this trade-off, the Mexican people, through their duly-elected lawmakers, have decided to limit tort damages. . . . It would be inappropriate-even patronizing-for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims.

301 F.3d 377, 381—82 (5th Cir. 2002).

Accordingly, the Court finds that the needs of the international system weigh in favor of applying the law of each decedent's domicile to Plaintiffs' damage claims.

### b. The relevant policies of the forum

Plaintiffs cite three cases in support of their position that Texas has an interest in ensuring that Plaintiffs are fully compensated according to Texas damage law. *See Huddy v. Fruehauf Corp.*, 953 F.2d 955 (5th Cir. 1992); *Ford Motor Company v. Aguiniga*, 9 S.W.3d 252 (Tex. App.—San Antonio 1999, pet. denied); *Trailways, Inc. v. Clark*, 794 S.W.2d 479 (Tex. App.—Corpus Christi 1990, writ. denied). However, these cases, which place primary importance on the plaintiffs' domicile, further the conclusion that the damage laws of Mexico and Honduras should apply in this case.

9

*Ford v. Aguiniga* involved an automobile accident in Mexico, in which the driver of the automobile and the majority of the individuals killed were Texas residents, and the van was inspected, licensed, registered, and primarily operated in Texas. *Aguiniga*, 9 S.W.3d at 260. There, the court held that Texas law should apply given Texas' interest in protecting its citizens. *Id.* The plaintiff in *Huddy v. Fruehauf* was a Texas resident at the time he was injured in an automobile accident in Georgia. *Huddy*, 953 F.2d at 956. In determining that Texas law still applied after the plaintiff later moved to New Jersey, the Fifth Circuit explained, "Texas has evinced a strong interest in protecting its residents from personal injury caused by defective products. At the time of this accident [Plaintiff] was within that protected group." *Id.* at 957. Finally, *Trailways v. Clark* involved a wrongful death action brought by the representatives of the estates of two Texas residents who were killed in a bus accident in Mexico. *Trailways*, 794 S.W.2d at 485. The court concluded that Texas law should apply and recognized that, "[i]n wrongful death cases, Texas has an interest in protecting the rights of its citizens to recover adequate compensation for the wrongful death of their relatives in foreign lands." *Id.* at 486.

All the cases cited by Plaintiffs support the conclusion that Texas has an interest in protecting and compensating its *citizens* and *residents*—a group that excludes Plaintiffs and their decedents. Plaintiffs have not cited any authority indicating that Texas has an interest in ensuring that citizens or residents of other countries—especially those whose presence in Texas is unlawful—are compensated beyond what is deemed just in their home country. To the contrary, Texas has no direct concern about the damages awarded to a foreign domiciliary. As the District Court for the Northern District of Texas explained:

> Texas wants its injured citizens to be able to recover a fair and reasonable amount directly related to the facts of particular cases unencumbered by any judicially imposed ceilings. The fact that such awards are not generally limited also exhibits a desire on the part of Texas to compensate injured persons fully enough to permit

10

> them to live out their lives without having to depend on state aid. Thus, Texas, is seeking to reduce or limit the burden on its state revenues.
>
> Because the Plaintiff in this case is a Canadian citizen currently residing in Canada, none of the interests implicitly furthered by Texas damage principles apply. [Plaintiff] will be no burden on the Texas state welfare system and none of his medical care, either past or future will depend on Texas state funds. Further, Texas has no direct concern about the amount of damages awarded to a Canadian domiciliary.

*Baird v. Bell Helicopter Textron*, 491 F. Supp. 1129, 1151 (N.D. Tex. 1980). Like the plaintiffs in *Baird*, Plaintiffs in this case will be no burden on the Texas welfare system or otherwise depend on Texas state funds.

Accordingly, the Court finds that the State of Texas has no interest in the amount of damages awarded to Plaintiffs.

### c. The relevant policies of the other interested states and the relative interests of those states in determination of the particular issue

Plaintiffs maintain that neither Mexico nor Honduras has an interest in applying its own law regarding damages in this case. As a result, Plaintiffs argue that a "false conflict" exists, and the law of Texas should apply.

The laws of Mexico and Honduras set forth a limitation on damages in order to protect their residents "'from excessive financial burdens or exaggerated claims.'" *Villaman v. Schee*, 15 F.3d 1095 (table), 1994 WL 6661, at *4 (9th Cir. Jan. 10, 1994) (quoting *Hurtado v. Superior Court*, 522 P.2d 666, 581 (Cal. 1974)); (*see* Lopez Aff. at 5; Rosenn Aff. at 7—8.) Plaintiffs contend that Mexico and Honduras therefore have no interest in having their damage laws applied because there are no Mexican or Honduran defendants to protect in this case. However, Plaintiffs ignore that Mexico and Honduras still seek to compensate tort victims for their injuries, even if these countries have struck a different balance between awarding plaintiffs and protecting defendants as compared to the State of Texas.

11

Both Mexico and Honduras view tort recovery as a means to make plaintiffs whole, not to provide economic windfall. Both jurisdictions also view recovery beyond compensatory damages as inappropriate in civil actions. This scheme is deliberate and well reasoned:

> Mexico has deliberately avoided an American-style system of compensation and has carefully crafted a scheme that awards only what it considers to be just compensation. Put another way, Mexico has an interest not just in seeing its citizens compensated, but also in assuring that the amount of compensation is just and appropriate as measured by Mexican standards.

DOYE & PONTON, THE RENAISSANCE OF FOREIGN ACTION AND A PRACTICAL RESPONSE, 300—01. Mexico and Honduras have an interest in compensating their resident tort victims in a manner that they consider just and appropriate, especially where an exponentially higher recovery under Texas law would likely serve to encourage members of their own workforce to abandon their home country to illegally enter the United States.

The damage laws of Mexico and Honduras are especially important here because wrongful death and survival actions are claimed. As recognized by the Second Restatement:

> [W]hen conduct and injury occur in state X but both the plaintiff and the defendant are domiciled in state Y, it would seem that . . . Y would have the greater interest in the issue of survival and that its law should control. . . . By way of further example, it would seem that the state where all interested persons are domiciled will . . . have the greatest interest in determining the extent to which each shall share in a tort recovery.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 cmt. d; *see also Galloway v. Korzekwa*, 346 F. Supp. 1086, 1091 (N.D. Miss. 1972) (applying Mississippi law to wrongful death action arising out of accident in Alabama, where deceased were residents of Mississippi and estates were being administered in Mississippi). Although Defendants are domiciled in the United States, the domicile of each decedent would have a greater interest in the issue of survival and would be better able to address the division of damages among family members.

Accordingly, the Court finds that Mexico and Honduras do have an interest in applying their laws to Plaintiffs' damage claims.

### d. The protection of justified expectations

In support of its position that the "justified expectations" factor weighs in its favor, Great Dane argues that awarding Plaintiffs compensation for lost wages, under Texas law, will potentially run afoul of the polices embodied in the Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C. § 1101 *et. seq. See Hoffman Plastic*, 535 U.S. at 140 & 150—52 (holding that the National Labor Relations Board could not award back pay to an illegal alien because such an award "trivializes" the immigration laws). Great Dane further notes that the Supreme Court in *Hoffman Plastics* admonished:

> [A]llowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA. It would encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations. However broad the Board's discretion to fashion remedies when dealing only with the NLRA, it is not so unbounded as to authorize this sort of an award.

535 U.S. at 152.

Contrary to Great Dane's position, ""Texas law does not require citizenship or the possession of immigration work authorization permits as a prerequisite to recovering damages for loss of earning capacity.'" *Contreras v. KV Trucking, Inc.*, 2007 WL 2777518, *1 (E.D. Tex. Sept. 21, 2007) (quoting *Tyson Foods, Inc. v. Guzman*, 116 S.W.3d 233, 244 (Tex. App.—Tyler 2003, no pet.)). "The injured party, however, is required to introduce sufficient evidence which enables the jury to reasonably measure earning capacity prior to the injury." *Wal-Mart Stores, Inc. v. Cordova*, 856 S.W.2d 678, 770 (Tex. App.—El Paso 1993, writ denied) (citing *City of Houston v. Howard*, 786 S.W.2d 391 (Tex.App.—Houston [14th Dist.] 1990, writ denied)).

Thus, it would make no *practical* sense to determine Plaintiffs' recovery for support and future support without reference to the wage rates of the decedents' home countries, since Plaintiffs have offered no evidence that the decedents ever worked a day in the State of Texas. *See Gutierrez*, 583 S.W.2d at 319 (finding that it made "little sense to apply Mexico measure of damages, which indexes the amount of recovery to the prevailing wages set by the labor law of that nation," when parties were residents of Texas and the only connection to Mexico was that the injury occurred there); *see also Sanango v. 200 East 16th Street Housing Corp.*, 788 N.Y.S.2d 314, 321 (N.Y.A.D. 1 Dept. 2004) (vacating plaintiff's existing award for lost earnings and remanding "to afford plaintiff an opportunity to prove the wages that, but for his injuries, he would have been able to earn in his home country").

The Court is not persuaded by Plaintiffs' argument that they were justified in their expectation that Texas law would apply in this case because the criminal prosecution took place in Texas, the incident was investigated in Texas, and survivors and witnesses were present in Texas for the prosecution. These factors are relevant to jurisdiction and venue—not choice of law. Likewise, the Court finds no merit to Plaintiffs' claims that "[t]he application of Mexican and Honduran law would wholly result in deplorable justice," and "[r]ather than protecting the interests of their residents, the application of the damages laws of Mexico and Honduras would . . . injure them through the denial of a meaningful remedy." (Dkt. No. 83 at 10.) As noted by Great Dane, "The Fifth Circuit has denounced the characterization of those laws as inadequate, admonishing that, 'It would be inappropriate—even patronizing—for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims.'" (Dkt. No. 86 at 17 (quoting *Gonzalez*, 301 F.3d at 382). *See also Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003); *Dtex, LLC v. BBVA Bancomer*,

14

*S.A.*, 512 F. Supp. 2d 1012, 1022 (S.D. Tex. 2007); *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp.2d 646, 659 (S.D. Tex. 2003); *Urena Taylor v. Daimler Chrysler Corp.*, 196 F. Supp. 2d 428, 432 (E.D. Tex. 2001); *Gomez de Hernandez v. Bridgestone/Firestone North American Tire, L.L.C.*, 204 S.W.3d 473 (Tex. App.—Corpus Christi 2006, pet. denied). Assuming that the decedents were entering Texas to find employment, it is evident that had the decedents been killed or injured while looking for work in their home country, Plaintiffs would be compensated for lost wages and expenses according to the laws of their home country, and such recovery would be deemed fair and adequate.

Finally, any expectations by Plaintiffs for an enhanced recovery for damages under a products liability theory based on the decedents' transactions or purchases within the State of Texas cannot be justified, as decedents were not consumers of any product designed, manufactured, sold, licensed, or inspected in the State of Texas.

Accordingly, the Court finds that Plaintiffs could have no justified expectation that they would be entitled to recover damages under Texas law arising from the decedents' brief and illegal time spent in the State of Texas.

### e. The basic policies underlying the particular field of law

The basic policies underlying tort law are set forth in Parts III.B.2.b and III.B.2.c *supra*, discussing the policies of Texas, Mexico, and Honduras as they relate to damages for personal injuries and wrongful death actions.

### f. Certainty, predictability, and uniformity of result

Plaintiffs' damage awards will be more uniform and predictable if the Court applies Mexican and Honduran law. As the court recognized in *Baird v. Helicopter Textron*,

> [T]he calculation of non-pecuniary damages is a difficult task at best. Texas has provided no real guidelines to assist courts and juries in their assessment of

15

damages for pain and suffering. The courts in Texas have invested juries with complete discretion in the calculation of these types of awards and have reviewed those awards on a case by case basis. Canadian courts, on the other hand, have been given some direction in their effort to arrive at a fair and reasonable damage award. The fact that standards have been enunciated in Canada would tend to assure a greater predictability and uniformity of result in this area of the law. Because these are important values in this as well as other areas of the law, Restatement 2d of Conflict of Laws, s 6, comment h, this factor also supports the Court's conclusion that Canadian law should be adopted on this point.

491 F. Supp. at 1151. Like Canadian courts, Latin American courts have been given direction in calculating damage awards, which would assure greater predictability and uniformity of result. As one expert has explained,

> The Mexican legal system . . . recognizes that in some of the tort actions it is very difficult to determine the economic amount of damages, particularly as it relates to the *perjuicio* [compensatory] *element* and the emotional distress claims (*daño mora*). With that in mind, the legislature created in the law an objective road map to quantify the damage. One of the main principles of the Mexican legal system[ ] is to give the same legal treatment to all the people in the same legal scenario. This provides legal security (*seguridad juridica*) to the system, which is the founding stone of the legal system for the countries that follow the civil law. The Mexican legislators have decided that the best way to create legal security is with objective quantification methods and limitations in the amount of subjective considerations when calculating the amount of damages.

*Mastondrea v. Occidental Hotels Management S.A.*, 918 A.2d 27, 40 (N.J. Super. A.D. 2007). This policy would especially be served here based on the uncertain wages and evidentiary issues present in these seven cases, which, although consolidated for purposes of discovery and other pretrial matters, will likely be tried separately.

Accordingly, the Court finds that applying the law of the decedents' domicile would best serve the desire for certainty, predictability, and uniformity.

### g. Ease in the determination and application of the law to be applied

Because Texas is the forum state, it would be easier for this Court to apply Texas law. However, United States courts regularly apply Latin American law, and "this Court cannot hold

that [Mexican and Honduran] law regarding . . . damages is inordinately difficult to deal with. This Section 6 factor, therefore, while failing to justify the use of [Latin American] law, provides weak support for Plaintiff's position that Texas law should apply." *Baird*, 491 F. Supp. at 1152.

## IV. Conclusion

The Court finds that Mexico and Honduras have important interests in the application of their damage law, and Texas has no underlying interest in the application of its law. "In this situation, known as a 'false conflict,' it is an established tenet of modern conflicts law that the law of the interested state should apply." *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 422 (Tex. 1984). Accordingly, Great Dane's First Amended Motion for Application of Foreign Law (Dkt. No. 75) is **GRANTED**, and the laws of each decedent's domicile law will be applied to determine damages.

It is so **ORDERED**.

Signed this 17th day of December, 2010.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE